**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>ANTHONY C. RUSSO,<br><br>                    Debtor. | Case No. 25-13856 (JNP)<br><br>Chapter 13 |
| ANTHONY C. RUSSO,<br><br>                    Plaintiff,<br><br>     v.<br><br>PHH MORTGAGE CORPORATION, UNKNOWN INVESTOR,<br><br>                    Defendants. | Adv. Pro. No. 26-1015<br><br>Judge: Jerrold N. Poslusny, Jr. |

<u>**MEMORANDUM DECISION**</u>

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

PHH Mortgage Corporation ("PHH") and "Unknown Investor" (collectively with PHH, the "Defendants") filed a motion to dismiss (the "Motion") Anthony C. Russo's four-count adversary complaint (the "Complaint"), alleging violations of the New Jersey Consumer Fraud Act (the "NJCFA") and the Fair Debt Collection Practices Act (the "FDCPA"), breach of contract, and common law fraud. As discussed below, the Motion will be denied with respect to the NJCFA and FDCPA claims and will be granted with respect to the breach of contract and common law fraud claims.

<u>**Background**</u>

The following facts are alleged in the Complaint and taken as true for purposes of the Motion. See Fowler v. UPMC Shadyside, 578 F.3d 203, 210–11 (3d Cir. 2009). On March 9, 2009,

1

Russo was issued a Fair Housing Administration ("FHA") loan, which was secured by a mortgage against 8 Spicebush Court, Gloucester, New Jersey (the "Property"). Complaint ¶ 9. After Russo fell behind in making payments, the holder of the FHA loan secured a foreclosure judgment, dated November 4, 2024. Id. ¶¶ 11, 13. The holder of the FHA loan is an undisclosed entity, and PHH is the servicer, or assignee, for the loan and is acting on behalf of the Unknown Investor. Id. ¶¶ 5–7.

In response to the foreclosure judgment, on April 13, 2025, Russo filed a voluntary Chapter 13 bankruptcy petition. Main Case 25-13856 Dkt. No. 1. Five months later, Russo called PHH to apply for a loan modification for the first time since being declared in default. PHH's representative indicated that "under the FHA guidelines, [he] was not eligible for a loan [modification] because [he] was attempting to apply for a [modification] more than once in the same delinquency cycle." Complaint ¶¶ 14, 15. On September 30, 2025, Russo again attempted to submit a verbal loan modification application, which PHH would not accept. Id. ¶ 18. PHH never acknowledged Russo made either verbal loan modification application. Id. ¶ 37.

That same day, Russo submitted a facially complete loss mitigation application by letter. Id. ¶¶ 19, 43. On October 3, 2025, PHH replied to Russo's request, stating that due to prior application reviews completed in the same delinquency cycle, his account was not eligible for additional modification reviews. Id. ¶ 20. PHH did not specify the applicable FHA guidelines that prevented it from performing a loan modification based on previous application reviews. Id. ¶ 16. PHH did not explain "when or how [Russo] submitted a prior application." Id. ¶ 36. PHH claimed that its own guidelines governed its processing of loan modification applications. Id.

On October 22, 2025, Russo sent PHH a Notice of Error ("NOE"), alleging that PHH failed to accept a verbal loss mitigation application, failed to provide accurate eligibility information, failed to review for all available loss mitigation options, and failed to provide required acknowledgements of the verbal loss mitigation applications. Id. ¶ 21; Ex. 1. One day later, Russo

sent an appeal of PHH's October 3, 2025, written loan modification denial. Id. ¶ 23. PHH failed to acknowledge or respond to this appeal. Id.

On December 5, 2025, PHH responded to the NOE, denying any obligation to review another loan modification application on the grounds that the account was long overdue and PHH had already reviewed the account several times for loss mitigation. Id. ¶ 24; Ex. 3. That same day, Russo sent a follow-up NOE alleging the same concerns he raised in the first NOE. Id. ¶ 25; id. Ex. 4. PHH responded on December 18, 2025, indicating that "[t]he concerns raised have been addressed in our previous response dated December 5, 2025." Id. ¶ 26; Ex. 5. Russo then sent a third NOE on December 26, 2025. Id. ¶ 27. PHH did not respond. Id. ¶ 28. Russo did, however, receive an acknowledgment on January 19, 2026. Id.

Thereafter, Russo filed the Complaint, raising four causes of action: (1) violations of the NJCFA; (2) breach of contract; (3) common law fraud; and (4) violations of the FDCPA.[1] In response, the Defendants filed the Motion, arguing that the Complaint failed to state a claim upon which relief may be granted under Rule 12(b)(6), made applicable by Bankruptcy Rule 7012. Dkt. No. 6. Russo filed opposition to the Motion. Dkt. No. 7. The Defendants then filed a reply. Dkt. No. 8. Both parties appeared and argued their positions at the March 24 hearing.

### Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1334, 157(a), (b), as well as the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended. Venue is proper in this Court under 28 U.S.C. § 1409. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (O).

---

[1] Russo then filed a "Supplement to Original Complaint," which appears to be identical to the Complaint. Dkt. No. 4. At the hearing on March 24, 2026, Russo's counsel stated that it was filed by mistake.

### Discussion

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Complaint must set forth "[f]actual allegations . . . enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). That is to say, the pleading must present "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claims asserted]." Id. at 556. Moreover, in assessing whether the Complaint sets forth sufficient factual allegations, the Court must "accept as true all of the allegations contained in [the Complaint,]" but may disregard any legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court must also construe the factual allegations contained in the Complaint "in the light most favorable to [Russo] and "ascertain whether [Russo states] a claim on which relief can be granted." Papasan v. Allain, 478 U.S. 265, 283 (1986). The Defendants bear the burden of "showing [that the Complaint] fails to state a claim." In re Plavix Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II), 974 F.3d 228, 231 (3d Cir. 2020).

### B. Count I – NJCFA

In moving to dismiss Russo's NJCFA claim, the Defendants chiefly argue that the NJCFA does not apply because under New Jersey law, the loan merged into the final judgment. Russo argued that the merger doctrine does not apply and that PHH remained the servicer through foreclosure judgment, which obligated it to abide by RESPA's servicer obligations. Dkt. No. 7 ¶¶ 6–11.

While it is true that in Gonzalez v. Wilshire Credit Corp., 25 A.3d 1103, 1117 (N.J. 2011), the New Jersey Supreme Court held that "a loan no longer exists after final judgment is entered, because the loan merges into the final judgment[,]" RESPA "regulations [12 C.F.R. §§ 1024.41(g)(1)–(2), 1024.2] suggest a servicer has an obligation to the [p]laintiff, at least until the

4

judicial sale is completed." Mannarino v. Ocwen Loan Servicing, LLC, 2018 WL 1526558, at *4–5 (D.N.J. Mar. 28, 2018). The court in Mannarino refused to apply the merger doctrine to claims brought over a loan servicer's conduct in refusing to review a loss mitigation application "after judgment, but before the foreclosure sale." Id. The court in Brouillette v. CitiMortgage, Inc., reached a similar conclusion, holding that the merger doctrine does not "categorically preclude[] NJCFA claims." 2024 WL 2796529, at *8 (D.N.J. May 31, 2024). The court noted that "other courts have allowed NJCFA claims to proceed for a servicer's conduct that occurred post-foreclosure judgment." Id. (citing Hager v. CitiMortgage, Inc., 2018 WL 11246771, at *9 (D.N.J. Feb. 27, 2018) Ogbebor v. J.P. Morgan Chase, N.A., 2017 WL 449596, at *1 (D.N.J. Feb. 2, 2017)).

The court in Brouillette also noted "[i]t would be perverse to allow for a scenario where Cenlar can consider [p]laintiff's loss mitigation application post-judgment and pre-foreclosure sale - a situation expressly contemplated by [RESPA] - only to find that Cenlar can escape liability for violating loss mitigation procedures under a strict application of New Jersey's 'merger' doctrine." Id. at *5. For the same reasons, the Court finds that the merger doctrine is inapplicable to Count I.

Moreover, PHH did not argue any other reason why Count I fails and conceded at oral argument that the claim would survive if the merger doctrine did not apply. The Complaint alleges that PHH acted as a servicer post-judgment but pre-foreclosure sale, but failed to acknowledge, respond to, or evaluate Russo's loss mitigation applications, as required by RESPA. Complaint ¶¶ 36–44. Thus, Russo properly alleged an NJCFA claim.

In the reply brief, the Defendants argue that Russo failed to address its arguments that it was not required to offer loan modification, and that Russo's letters were not qualified written requests. Dkt. No. 8. While the Defendants may be correct that Russo did not respond to these points, the Complaint does not appear to make either of these assertions.

In conclusion, because the merger doctrine does not apply to Count I, and Russo has otherwise alleged a claim under the NJCFA, the Motion is denied as to Count I.

### C. Count II – Breach of Contract

Count II alleges the Defendants breached the duty of good faith and fair dealing by failing to consider Russo's loan modification requests. Complaint ¶¶ 60-61. The Motion argues that because PHH is not a party to the mortgage loan contract a breach of contract claim cannot be maintained against it. Dkt. No. 6-3. The Defendants further argue that there is no contract because the loan merged into the foreclosure judgment. Dkt. Nos. 6-3, 8.

As previously discussed, a loan (i.e., a contract) ceases to exist "after default leads to the entry of a final judgment." Gonzalez, 25 A.3d at 1117. Merger prevents plaintiffs from asserting claims based on the terms and provisions of the contract post-judgment. See In re A&P Diversified Techs. Realty, Inc., 467 F.3d 337, 341 (3d Cir. 2006). However, the presumption of merger may be overcome upon showing that "the parties had a contrary intent," either via a post-judgment agreement (amounting to subsequent performance) or a contractual provision that is intended to survive post-judgment. Gonzalez, 25 A.3d at 1117; see also In re Stenardo, 992 F.2d 1089, 1095 (3d Cir. 1993).

Here, unlike in Count I, a federal statutory scheme does not support precluding the application of the merger doctrine. Therefore, because the loan merged into the foreclosure judgment the Defendants had no contractual obligation of good faith and fair dealing with Russo after the foreclosure judgment was entered. Additionally, Russo has not pleaded that the loan evidenced an intent to keep the parties bound to the duty of good faith and fair dealing post-judgment or the existence of a post-judgment agreement. Therefore, the merger doctrine applies and the Motion will be granted as to Count II. However, the Court will allow Russo twenty-one days to amend this count to allege that one of the exceptions to the merger doctrine applies.

6

Because the Court concludes that the merger doctrine applies, it need not discuss whether Russo is a third-party beneficiary of any agreement between the Defendants.

### D. Count III – Common Law Fraud

Count III alleges common law fraud, which requires Russo to allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the [Defendants] of its falsity; (3) an intention that [he] rely on it; (4) reasonable reliance thereon by [himself]; and (5) resulting damages." Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997). Russo asserts that the Defendants intentionally misrepresented the status of Russo's loan modification and eligibility for loss mitigation under the FHA guidelines. Complaint ¶¶ 64–66. The Motion argues that Russo failed to allege that the Defendants knew their representations were false or intended Russo to rely on those representations. Dkt. No. 6-3. The Defendants further argue that Russo could not have relied on any statements because the Complaint indicates that Russo never believed the alleged misrepresentations. Id.

Russo failed to allege a prima facie claim for common law fraud because the Complaint includes several allegations that Russo knew PHH's statements were not correct and, as such, Russo did not reasonably rely on PHH's statements to him. Specifically, Russo alleged that after receiving PHH's October 3, 2025, denial letter, he filed numerous NOEs disputing PHH's representations. Complaint ¶¶ 20–28. Challenging PHH's assertions shows that Russo knew such representations were false and that he was not relying on them. Furthermore, at oral argument, Russo conceded that given the filing of the NOEs, the Complaint did not allege the reliance element of common law fraud. Therefore, Russo's claim for common law fraud fails.

Because the Complaint does not allege reasonable reliance, the Motion will be granted with respect to Count III. Although it appears unlikely that Russo will be able to plead common law

fraud, the Court will allow Russo twenty-one days to file an amended complaint to properly allege common law fraud.

### D. Count IV – FDCPA

The final count of the Complaint alleges a violation of the FDCPA. Complaint ¶ 71. To state a claim under the FDCPA (15 U.S.C. § 1692, et seq.), Russo must allege that: (1) he is a consumer; (2) the Defendants are debt collectors; (3) the Defendants' challenged practice involves an attempt to collect a "debt" as defined in the Act; and (4) the Defendants violated a provision of the FDCPA in attempting to collect a debt. See Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014). In other words, the Defendants must have used "prohibited practices" to collect a debt. Genid v. Fed. Mortg. Ass'n & Setrus, Inc., 2016 WL 4150455, at *6 (D.N.J. Aug. 2, 2016).

The Motion argues that Count IV should be dismissed because the Defendants' communications related only to providing information to Russo about options to save the Property from foreclosure. Dkt. No. 6-3. The opposition asserts that PHH attempted to collect a debt because its letter to Russo states that "[t]his communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose." Dkt. No. 7; Complaint Ex. 3.

Here, Russo alleged that he was a consumer and that the Defendants are debt collectors. Complaint ¶¶ 67, 69–70. Whether Russo sufficiently alleged that PHH's challenged practice involves an attempt to collect a debt as defined by the FDCPA is less straightforward. The Third Circuit has held that for purposes of the third element of an FDCPA claim, debt collection communications are "not limited to specific requests for repayment" and include communications conveying "information regarding a debt." Allen ex rel. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 n.5 (3d Cir. 2011). See also McLaughlin v. Phelan Hallinan & Schmieg, LLP, 756 F.3d 240, 245 (3d Cir. 2014) ("Indeed, communications that include discussions of the status of

payment, offers of alternatives to default, and requests for financial information may be part of dialogue to facilitate satisfaction of a debt and hence can constitute debt collection activities.").

The Complaint properly alleges the third element of Russo's FDCPA claim by alleging that PHH made misrepresentations surrounding the applicable servicing guidelines and Russo's past loan modification applications and that those representations constitute information regarding his debt. Complaint ¶ 71. Therefore, Russo satisfied the third element of his FDCPA claim. Lastly, Russo alleged that PHH violated a specific provision of the FDCPA in attempting to collect a debt, namely 15 U.S.C. § 1692e(2). Consequently, Russo properly alleged an FDCPA claim, and the Motion will be denied with respect to Count IV.

In its reply brief, the Defendants argue that Russo abandoned his FDCPA claim because his opposition did not specifically describe the prohibited practices used to collect the debt. Dkt. No. 8. However, Russo's response does address the FDCPA arguments. See Dkt. No. 7 ¶ 11. Moreover, the Complaint alleged prohibited practices that were used to facilitate debt collection, namely that the Defendants misrepresented the governing guidelines and modification history of Russo's loan and falsely represented the legal status of his debt to avoid having to review his loan modification applications and to instead assert a claim on the debt. Complaint ¶¶ 70–71. Therefore, Russo did not abandon his FDCPA claim.

In conclusion, because Russo alleged facts sufficient to satisfy the elements of a claim under the FDCPA the Motion will be denied with respect to Count IV.

### V. Conclusion

Russo has alleged sufficient facts to survive the Motion with respect to his NJCFA and FDCPA claims, but not with respect to his breach of contract and common law fraud claims.

9

Therefore, the Motion will be denied as to Counts I and IV and granted as to Counts II and III. However, Russo will be allowed twenty-one days to file an amended complaint. The Court asks the Defendants' counsel to prepare, circulate, and submit a proposed form of order.

Dated: April 22, 2026

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE